IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BARBARA F., )<br>)<br>PLAINTIFF, )<br>)<br>vs. )<br>)<br>Andrew M. Saul,[1] Commissioner of )<br>Social Security, )<br>)<br>Defendant. ) | CASE NO. 18-CV-455-FHM |

**OPINION AND ORDER**

Plaintiff, BARBARA F., seeks judicial review of a decision of the Commissioner of the Social Security Administration denying disability benefits.[2] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

**Standard of Review**

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th

---

[1] Effective June 17, 2019, Andrew M. Saul is the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul should be substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff Barbara F.'s application was denied initially and upon reconsideration. After remand from the Appeals Council, a second hearing before an Administrative Law Judge (ALJ) John W. Belcher was held May 11, 2017. By decision dated September 19, 2017, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on July 2, 2018. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 63 years old on the alleged date of onset of disability and 67 on the date of the denial decision. Plaintiff has her Bachelor's degree in history and her past work experience includes utilization repair technician. Plaintiff claims to have become disabled as of April 8, 2014[3] due to neuropathy, problems with her left wrist, depression, and anxiety. [Dkt. 13, p. 1].

## The ALJ's Decision

The ALJ found that Plaintiff has severe impairments relating to brain aneurysm, left arm fracture, and neuropathy of the feet. [R. 17]. The ALJ determined that Plaintiff has the residual functional capacity to perform light exertional work and is able to lift and/or carry, push and/or push (sic) 20 pounds occasionally and 10 pounds frequently, stand and/or walk

---

[3] Plaintiff amended her alleged onset date from October 5, 2013 to April 8, 2014. [R. 40, 68].

for 20 minutes at one time, and up to 2 hours in an 8-hour workday, sit for about 6-8 hours out of an 8-hour workday, frequently finger, handle, and feel with the left hand. [R. 20]. The ALJ determined that Plaintiff was able to perform her past relevant work as a utilization repair technician. [R. 31]. Therefore, the ALJ found that Plaintiff was not disabled as defined by the Social Security Act. [R. 31]. The case was thus decided at step 4 of the five-step evaluative sequence for determining whether Plaintiff is disabled. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## Plaintiff's Allegations

Plaintiff asserts that the ALJ failed to: 1) properly consider the medical opinions; 2) properly consider Plaintiff's allegations; and 3) properly consider Plaintiff's mental impairments. [Dkt. 13, p. 4].

## Analysis

### Medical Opinions

Plaintiff argues that the ALJ failed to properly consider the opinions of consultative examiners, Drs. Carroll and DeLaughter, and treating physician, Dr. Saizow. [Dkt. 13, p. 5-6].

#### Dr. DeLaughter

Plaintiff contends that the ALJ's RFC assessment acts as a rejection of Dr. DeLaughter's stand/walk limitation. Further, the ALJ failed to explain why he rejected some of Dr. DeLaughter's restrictions while adopting others. [Dkt. 13, p. 6].

Consultative examiner, Harold Zane DeLaughter, D.O., examined Plaintiff on September 12, 2015. [R. 644-649]. Plaintiff reported that she had been having problems

3

with her feet for twenty years with the pain steadily worsening. Plaintiff indicated that she sought treatment for her feet the previous year and was advised she had arthritis and neuropathy. Medications did not help. [R. 644]. Dr. DeLaughter noted that Plaintiff was cooperative, speech was one hundred percent intelligible, and thought processes appeared normal. Plaintiff could move all extremities well; grip strength and great toe strength was equal bilaterally and rated 5/5. Plaintiff had full range of motion in her spine. Finger to thumb opposition was adequate; fine tactile manipulation of objects was normal; straight leg raises were negative bilaterally in seated and supine positions. Toe and heel walking was normal but painful bilaterally. [R. 645]. On September 12, 2015, Dr. DeLaughter also completed a Medical Source Statement (Physical) opining that Plaintiff could lift/carry up to ten pounds frequently; sit for 5 hours without interruption and 7 hours total in an 8-hour work day; stand one hour without interruption and two hours in an 8-hour work day; walk one hour without interruption and walk one hour total in an 8-hour work day. [R. 650-51]. Dr. DeLaughter identified Plaintiff's foot pain and small stature as support for his lift/carry limitations. [R. 650].

The ALJ gave the opinion of Dr. DeLaughter some weight noting he performed an extensive physical examination and prepared a medical source statement showing Plaintiff had the RFC for limited range of sedentary exertion with additional nonexertional limitations. The ALJ did not adopt Dr. DeLaughter's more restrictive lift/carry limitations noting Plaintiff's activities included shopping, traveling independently, using public transportation, climbing steps at a reasonable pace, preparing simple meals, feeding herself, personal hygiene, sorting, handling, and using papers/files. [R. 655]. The ALJ noted that while Dr. DeLaughter's limitations were more restrictive than the ALJ's RFC

assessment, there were similarities regarding standing and/or walking, as well as the feeling/manipulation limitations. [R. 31].

Contrary to Plaintiff's claim, there is not a significant difference between the stand/walk limitation outlined in the ALJ's RFC assessment (20 minutes at one time and up to two hours in an 8-hour workday) and Dr. DeLaughter's stand/walk limitation (stand one hour without interruption and two hours in an 8-hour work day; walk one hour without interruption and walk one hour total in an 8-hour work day). Further, Dr. DeLaughter determined Plaintiff had normal grip and great toe strength bilaterally; ability to move all extremities well; normal fine tactile manipulation; ability to effectively oppose thumbs to fingertips; manipulate small objects, effectively grasp small hand tools; normal heel/toe walking; and stable, independent gait. [R. 27, 649]. The court finds the ALJ reasonably considered Dr. DeLaughter's opinion and provided appropriate reasons supported by the record for the weight given to his opinion.

## Dr. Saizow

Plaintiff argues that the ALJ erred by giving the simple conclusory statement, "[t]he opinion 'is inconsistent with the totality of the medical evidence,'" as support in rejecting the opinion of treating physician, Ron Saizow, M.D. [Dkt. 13, p. 6]. Plaintiff contends that given Dr. Saizow's functional limitations, she cannot perform the standing and walking required for light work. [Dkt. 13, p. 6].

Dr. Saizow, examined Plaintiff on April 15, 2014, concerning burning and tingling pain in both feet. Plaintiff reported that standing and walking increased her pain. Dr. Saizow opined Plaintiff had peripheral neuropathy in her feet and prescribed medication. On May 5, 2015, Dr. Saizow completed a Medical Source Opinion of Residual Functional

5

Capacity indicating that Plaintiff could stand/walk less than two hours and lift/carry less than ten pounds during an 8-hour workday. Medical findings noted to support Dr. Saizow's assessment was "painful neuropathy." [R. 535]. Dr. Saizow also completed a Handicapped Parking Placard Application on May 5, 2015, noting Plaintiff was severely limited in her ability to walk due to painful neuropathy. [R. 536].

The ALJ gave little weight to the opinion of Dr. Saizow as to Plaintiff's ability to lift and/or carry less than ten pounds, and stand and/or walk less than two hours in an 8-hour workday because it is inconsistent with the totality of the evidence. [R. 31] The ALJ noted Dr. Saizow's findings of April 2014 that Plaintiff had intact touch and pinprick sensation bilaterally in the feet; negative Babinski, and normal Achilles reflexes. Examination in May 2014 indicated pulses were palpable in both feet and monofilament testing was normal bilaterally. Sensation to pinprick/light touch was diminished in the right and left medial foot. [R. 24-25]. Consultative EMG/NCV studies performed in August 2015 revealed normal nerve conduction studies in the bilateral upper and lower extremities without evidence of entrapment syndrome or neuropathy. [R. 27]. The court finds that the ALJ's evaluation of the medical reports of Dr. Saizow was proper and is supported by substantial evidence.

### Dr. Carroll

Plaintiff argues that the ALJ erred by failing to include Dr. Carroll's manipulative limitations in the RFC assessment or give any reasons for rejecting such limitations. [Dkt. 13, p. 5]. "It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions," including the opinions of state agency medical consultants. *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir.2012) (citations omitted).

6

Consultative examiner, Nick Lee Carroll, D.O., examined Plaintiff on May 31, 2014. [R. 507-513]. [R. 23-24]. Plaintiff reported that she had difficulty concentrating, memory impairment, and left hand pain and weakness. Plaintiff advised that her difficulty with concentration had been developing since she was diagnosed with a brain aneurysm in October 2014. She also fractured her left wrist in October 2013. [R. 507]. Dr. Carroll noted that Plaintiff had mild sensory loss in feet bilaterally; grip strength was 4+/5 right, 3-/5 left; great toe strength was equal bilaterally and rated 5/5. There were no signs of upper/lower motor neuron defect. Plaintiff's was able to heel/toe walk; range of motion of her spine was without defect; straight leg raise was negative in supine positions. A boney prominence in the medial left wrist compartment was appreciated. Plaintiff was alert and oriented times three; mood congruent, affect normal; thought processes non-tangential. Plaintiff answered questions appropriately and with minimal hesitation. Plaintiff's gait was stable with normal speed and stability, and no limp was present. Dr. Carroll opined that Plaintiff had mild cognitive tracking delay; short term memory loss so stated by Plaintiff; left wrist/hand weakness secondary to trauma; major depression; and generalized anxiety. [R. 508]. Further, Plaintiff was unable to oppose the thumb to fingertips, manipulate small objects, and effectively grasp tools with her left hand. [R. 512].

Although the ALJ failed to state in the decision the weight he gave the opinion of Dr. Carroll, he provided a very thorough discussion of the medical evidence which included the opinions of Drs. Carroll and DeLaughter and specifically noted their inconsistency concerning Plaintiff's manipulative limitations. [R. 23-24, 27-28]. The ALJ also noted x-rays taken in 2013 revealed a minimally displaced transverse fracture of the distal left

7

radius, as well as x-rays in October 2015 which revealed subacute impacted fracture involving distal left radius with dorsal angulation. [R. 24, 28]. The detailed discussions demonstrate the ALJ's consideration of the medical evidence. Plaintiff's own testimony indicated that she was able to sweep, mop, wash dishes, and do laundry. [R. 21]. Plaintiff also reported that she attended doll club, [R. 337], walked for transportation, [R. 336], drove a vehicle, [R. 72, 336], ran errands, shopped, and utilized the library. [R. 83, 89-90, 334, 336-37, 616]. Her condition did not affect her ability to lift, squat, bend, stand, reach, walk, sit, or kneel. [R. 338].

The Tenth Circuit has held that an RFC determination is sufficient if supported by a proper narrative statement, a thorough review of the medical evidence, a description of the claimant's own report, and a discussion of the activities the Plaintiff engaged in after the relevant time period. See *Hendron v. Colvin*, 767 F.3d 951, 954-55 (10th Cir. 2014). Similarly, the ALJ in this case reviewed the evidence, described Plaintiff's testimony, and discussed both the medical facts and Plaintiff's daily activities. [R. 21-28]. The ALJ's reasoning, and the support for that reasoning, is readily apparent. The court finds the RFC assessment is supported by substantial evidence and should not be disturbed.

**Credibility**

Plaintiff also argues that the ALJ did not properly consider her subjective complaints and symptoms such as her inability to be on her feet for very long; problems using her left hand; and depression and anxiety cause problems with concentration and being around a lot of people. [Dkt. 13, p. 7]. "Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively

linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart,* 395 F.3d 1168, 1173 (10th Cir. 2005)(citation, brackets, and internal quotation marks omitted).

The ALJ reduced Plaintiff's credibility because of numerous inconsistencies regarding her physical limitations and the objective medical evidence. Records from Family and Children's Services indicate Plaintiff's mood and anxiety might improve with low stress employment. [R. 610]. In October 2013 records show that Plaintiff had a brain aneurysm. A lumbar puncture was recommended to definitively rule out subarachnoid hemorrhage which Plaintiff refused stating she had worked in the medical field and did not want that procedure. Despite giving assurance she would follow up with her primary care physician, Plaintiff did not. [R. 30, 425-529]. Further Plaintiff was not compliant with followup orthopedic treatment for left wrist fracture. [R. 30, 484]. The ALJ also noted that Plaintiff's activities of daily living are not limited to the extent one would expect given the complaints of disabling symptoms and limitations. Plaintiff testified that she showers, dresses, and prepares food in the morning. During the day, Plaintiff reads, watches television, browses and talks to friends on the computer. Plaintiff is able to prepare simple meals that do not require her to chop or open cans. She takes breaks while cleaning her house, does laundry twice a week, leaves her home two to three times daily, shops in stores and on the computer, goes to the library every couple of weeks, and goes to her doll club meetings. She also has no problems getting along with authority figures. [R. 30].

The court finds that the ALJ performed an adequate credibility analysis. The ALJ cited numerous grounds, tied to the evidence, for the credibility finding, including Plaintiff's inconsistent statements about her activities and her functional limitations. [R. 30]. The ALJ

thus properly linked his credibility finding to the record, therefore, the court finds no reason to deviate from the general rule to accord deference to the ALJ's credibility determination.

**Mental Impairments**

Plaintiff argues that the ALJ erred by failing to include mental limitations in the RFC assessment. Plaintiff contends that although the ALJ found Plaintiff's mental impairments caused mild limitations at step two, no mental activities[4] were mentioned in his RFC assessment. [Dkt. 13, p. 9-10].

In a social security disability or Supplemental Security Income (SSI) case, an administrative law judge (ALJ) must evaluate the effect of a claimant's mental impairments on her ability to work using a "special technique" prescribed by the Commissioner's regulations. 20 C.F.R. §§ 404.1520a(b)-(d), 416.920a(b)-(d). At step two of the Commissioner's five-step analysis, this special technique requires the ALJ to determine whether the mental impairment is "severe" or "not severe." *Id.* §§ 404.1520a(d), 416.920a(d). But the regulations also instruct that even if the ALJ determines that a claimant's medically determinable mental impairments are "not severe," he must further consider and discuss them as part of his residual functional capacity (RFC) analysis at step four. See *id.* §§ 404.1545(a)(2), 416.945(a)(2). In assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe. See 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). The Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis. See Social Security

---

[4] Plaintiff mistakenly stated "activities" as opposed to "limitations."

10

Ruling (*SSR*) 96-8p, 1996 WL 374184, at *4 (July 2, 1996) (noting that criteria used at steps two and three of the analysis to evaluate mental impairments are "not an RFC assessment," and that "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form]."). Most importantly, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Id.* at *7.

At step two, the ALJ found Plaintiff's medically determinable mental impairments of organic brain syndrome and affective disorder did not cause more than a minimal limitation in Plaintiff's ability to perform basic mental work activities and were therefore non-severe. [R. 18]. In assessing Plaintiff's RFC, the ALJ noted Plaintiff sought mental health treatment and pharmacological management at Family and Children's Services in April 2014 for complaints of depression and anxiety. Record evidence from May 2014 indicates Plaintiff presented with pleasant mood and congruent affect. She had positive eye contact, coherent speech, and was medication compliant. [R. 614]. In September 2014 Plaintiff loved the change to her medication, sleep was improved, and headaches and anxiety were less. February 2015 examination showed that Plaintiff was to continue with her current medication. Plaintiff reported that her mood and anxiety might improve with a low stress job. [R. 18]. In December 2015 Plaintiff was compliant with her medication and it was helping with depression and anxiety. [R. 18-19]. The ALJ also noted Plaintiff reported that the root of her anxiety and depression was due to financial trouble. [R. 18-19, 25-26].

The ALJ also indicated that the state Disability Determination Service (DDS) medical consultants found Plaintiff's depression and anxiety were nonsevere and did not cause any limitations to activities of daily living, social functioning, concentration, persistence or pace, and there was no repeated episodes of decompensation, each of extended duration, according to the "B" criteria. The ALJ specifically noted that state agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Social Security Act which requires him to give their opinions appropriate consideration. [R. 29]. The ALJ gave the DDS consultants great weight as Plaintiff does have some mild limitations in the "B" criteria of the listings. [R. 30].

The ALJ provided an adequate discussion and properly considered Plaintiff's mental limitations in assessing her RFC. Accordingly, the court sees no error in the ALJ's residual functional capacity determination.

## **CONCLUSION**

The court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. The court further finds there is substantial evidence in the record to support the ALJ's decision. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 6th day of September, 2019.

_____
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE